# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMEENA BROWN and EVAN )
BRAGGS, Individually and as Co- )
Administrators of the Estate of A.B., )
deceased, )
          Plaintiffs, )
        )
       v. )   C.A. No. N20C-01-067 PAW
        )
FISHER-PRICE, INC. and )
MATTEL, INC. )
        )
          Defendants. )

Submitted: November 8, 2024
Decided: December 20, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Wayne Ross, M.D. Pursuant to D.R.E. 702;*

## DENIED.

Robert J. Leoni, Esq., Shelsby & Leoni, PA, *Attorney for Plaintiffs.*

Jennifer C. Wasson, Esq., Carla M. Jones, Esq., and Ryan Kingshill, Esq., of Potter Anderson & Corroon LLP, *Attorneys for Defendants*.

**WINSTON, J.**

## I. <u>INTRODUCTION</u>[1]

Defendants move to exclude the expert testimony of Dr. Wayne Ross under D.R.E. 702.[2]  Plaintiffs seek to introduce Ross's testimony to show A.B. "died from complications of asphyxia due to smothering while his face was wedged against the soft goods of the side of the RnP ..."[3]  Ross additionally opined as to the pain and suffering A.B. experienced before dying,[4] and Ross's report also touches on the topic of rebreathing.[5]  Defendants contend: (1) Ross possesses no scientific basis to offer a causation opinion; (2) Ross similarly lacks a scientific basis to opine the RnP caused A.B.'s death; and (3) Ross's conclusion that A.B. died of asphyxia due to smothering lacks a reliable tether to any accepted science.[6]

---

[1] This Memorandum Opinion and Order references the factual and procedural background outlined in the Court's Memorandum Opinion and Order upon Consideration of Defendants' Motion for Summary Judgment, which the Court incorporates by reference.  Unless otherwise noted, defined terms are ascribed the same meaning as in the Court's Summary Judgment Memorandum Opinion.

[2] Defs.' Mot. to Exclude Pls.' Expert Wayne Ross, M.D., D.I. 174.

[3] Pls.' Opp'n to Defs.' Mot. to Exclude Wayne Ross, M.D., D.I. 217 at 5.

[4] D.I. 174 Defs.' Ex. C at 7 ("Dr. Ross's Report"); Ross's testimony regarding conscious pain and suffering is examined in a separate Memorandum Opinion and Order.

[5] Dr. Ross's Report; Ross's testimony regarding rebreathing is examined in a separate Memorandum Opinion and Order.

[6] D.I. 174 at 12.

## II. STANDARD OF REVIEW

Delaware Rule of Evidence ("D.R.E.") 702 governs the admission of expert testimony. Under D.R.E. 702, expert opinion testimony is admissible provided that the witness "is qualified as an expert by knowledge, skill, experience, training, or education" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of the fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has applied the principles and methods to the facts of the case.[7]

The burden falls on the party seeking to admit the expert testimony to show, by a preponderance of the evidence, its admissibility under D.R.E. 702.[8] "Once expert testimony is challenged, the reviewing court must ensure that the proffered testimony is both relevant and reliable."[9] To fulfill this duty, this Court acts as gatekeeper, determining if "the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be

---

[7] D.R.E. 702.

[8] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006).

[9] *Scottoline v. Women First, LLC*, 2023 WL 2325701 at *3 (Del. Super. Mar. 1, 2023) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).

applied to the facts in issue."[10]  In making that determination, the Court applies a five-step test that examines whether:

> (1) the witness is qualified as an expert by knowledge, skill, experience, training[,] or education; (2) the evidence is relevant [and reliable]; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[11]

For scientific evidence to be deemed reliable, the testimony must be rooted in science and derived from the scientific method.[12]  Expert testimony is relevant when it assists the trier of fact to understand the evidence or determining a fact in issue. Thus, the core of a *Daubert* analysis is the "principles and methodology" used in formulating an expert's testimony, not on the expert's resultant conclusions.[13]  This Court possesses "broad latitude to determine whether any or all of the *Daubert*

---

[10] *Gen. Motors Corp. v. Grenier*, 981 A.2d 531, 536 (Del. 2009) (internal quotations omitted) (quoting *Daubert*, 509 U.S. at 592-93).

[11] *Norman v. All About Women, P.A.*, 193 A.3d 726, 729-30 (quoting *Smith v. Grief*, 2015 WL 128004 (Del. Jan. 8, 2015)).

[12] *Daubert*, 509 U.S. at 590-94.

[13] *Bowen*, 906 A.2d at 794 (citing *Daubert*, 509 U.S. at 595).

factors are reasonable measures of reliability in a particular case."[14]  "A strong

preference exists for admitting evidence that may assist the trier of fact."[15]

## III.  ANALYSIS

In his report, Ross focuses his opinion on A.B.'s cause of death.[16]  He explains

his methodology for determining A.B.'s face pressed against the side of the RnP,[17]

and opines that position obstructed A.B.'s breathing, eventually resulting in his death

by "complications of asphyxia due to smothering."[18]  Neither Ross's initial report,

nor his supplemental report,[19] opine as to how A.B. turned onto his side.[20]  Ross did,

---

[14] *Grenier*, 981 A.2d at 536 (internal quotations omitted) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

[15] *Norman*, 193 A.3d at 730.

[16] *See generally* Dr. Ross's Report at 5-7.

[17] At oral argument, Defendants contended that all Plaintiffs' expert opinions were factually flawed because they failed to correctly account for the position of A.B.'s face as described by his mother in her deposition.  This assertion is incorrect.  *See* Dr. Calhoun's Report at 6; Dr. Hoffman's Report at 6; Dr. Mannen's Report at 5; Dr. Rosen's Report at 6; Dr. Ross' Report at 4.  Further, challenges to the factual basis of an expert opinion go to credibility, not admissibility.  An expert's testimony will be excluded on the factual basis grounds only in the narrow circumstance where the expert has completely neglected the core facts of the case.  *See Henlopen Hotels, Inc. v. United National Insurance Co.*, 2020 WL 233333 (Del. Super. Jan. 15, 2020).  This is not the case here.

[18] Dr. Ross's Report at 6.

[19] D.I. 175 Defs.' Ex. F (the "Supplemental Report").

[20] Ross does opine "[t]he cause of death here was due to mechanical asphyxia caused by the Rock 'n Play."  Dr. Ross's Report at 6.  Defendants appear to misquote Ross as using the term "defective."  D.I. 175 at 3-4 n.3.  Had Ross referred to the RnP as defective, the analysis regarding the admissibility of that statement would differ

5

however, offer an opinion during his deposition as to how the RnP's design contributed to A.B.'s ability to roll into a dangerous position.[21]

## A.   ROSS QUALIFIES AS AN EXPERT ON FORENSIC PATHOLOGY.

Defendants argue Ross cannot offer testimony in this case because "he has never concluded that a Rock 'n Play Sleeper has caused an infant's death."[22] Defendants further points to Ross's failure to cite to any publications in support of his opinion as a basis for excluding his testimony.[23] Defendants also note Ross testified "fewer than ten percent of the autopsies he has conducted throughout his career have been on infants."[24]

From the outset, Defendants cannot establish Ross lacks experience in conducting autopsies on infants. Ten percent of all the autopsies Ross conducted still equates to at least 1,300 autopsies.[25] Defendants' assertions that Ross does not qualify as "an epidemiologist, psychiatrist, [ ] psychologist[, or] engineer and does

---

from his opinion as to the cause of A.B.'s death. Factually, Ross concludes A.B. died because his face pressed against the side of the RnP. That conclusion does not require finding the RnP to be defective. Ross's opinion that A.B. died from asphyxia is (1) relevant because Defendants have disputed the cause of death; and (2) not necessarily reliant on any defect present in the RnP.

[21] D.I. 217 Pls.' Ex. D at 418-422 ("Dr. Ross's Deposition").

[22] D.I. 174 at 3.

[23] *Id*. at 4.

[24] *Id*. at 8.

[25] *Id*. (Ten percent of the 13,000 autopsies Ross testified he conducted equates to 1,300 autopsies specifically conducted on infants).

not design products" are similarly unpersuasive, as Ross does not present himself as an expert in those fields or intend to offer an opinion reliant on expertise in those fields.[26]  Defendants' contention that Ross has never concluded an RnP caused an infant's death has no bearing on the Court's analysis of Ross's qualifications as an expert witness.  Thus, the Court finds Ross qualified as an expert in forensic pathology.

## B.    ROSS'S REPORT IS GROUNDED IN RELIABLE SCIENCE AND ADMISSIBLE.

Ross's opinion provides seven conclusions "given to a reasonable degree of medical probability."[27]  Those conclusions can be summarized as A.B. died of asphyxia caused by having his face pressed against the side of the RnP.[28]  Ross based his conclusions on: (1) A.B.'s medical records, including the EMS report; (2) witness statements provided by A.B.'s mother and grandmother; and (3) Ross's training and experience as a forensic pathologist.[29]

Defendants posit Ross's opinion does not have a reliable scientific basis.[30] Defendants center their argument on a list of sources Ross did not rely on in forming

---

[26] *Id*.

[27] Dr. Ross's Report at 7.

[28] *Id*. at 6-7.

[29] *See generally* Dr. Ross's Report.

[30] D.I. 174 at 19.

his opinion.[31]  Pointing to the third *Daubert* factor, Defendants argue Ross did not base his opinion on information "reasonably relied upon by experts in the particular field."[32]  This argument appears to misinterpret the analysis *Daubert* requires.

The third *Daubert* factor serves as a guardrail against unreliable hearsay evidence forming the basis of an expert's opinion.[33]  "The [third] factor does not pertain to information which the expert *has not* relied on."[34]  In *Norman*, the challenged expert witness "arrive[d] at his opinions by applying his training and experience to the facts of [that] case."[35]  Aside from the patient's medical records and witness statements, the doctor in *Norman* relied solely on his training and experience to formulate his opinion.[36]  The Delaware Supreme Court ruled the doctor's training and experience formed a sufficient basis to admit his opinion, noting that "[m]edical literature or peer reviewed publications may be useful factors in an appropriate case, and may be relevant to the defense in this case, but they have no bearing on the admissibility of [the doctor's] opinions."[37]

---

[31] *Id*. at 19-21.

[32] *Daubert*, 509 U.S. at 595.

[33] *Norman*, 193 A.3d at 731.

[34] *Id*. (emphasis added).

[35] *Id*.

[36] *Id*.

[37] *Id*.

Ross similarly applied his training and experience to the facts of this case. Defendants point to all of the sources Ross did not use, but Delaware law makes clear the Court's analysis must focus solely on the sources Ross did use.[38] Ross's failure to cite to a peer reviewed publication, or conduct his own independent research on "pediatric movement or breathing,"[39] does not factor into the analysis required by *Daubert*. Ross based his opinion on his own expertise, and that expertise forms a sufficiently reliable scientific basis to justify the admission of his opinion.

### C. ROSS'S OPINION ON THE CHAIN OF EVENTS LEADING TO A.B.'S DEATH FOLLOWS LOGICALLY FROM ROSS'S CONCLUSIONS AND DOES NOT RENDER HIS OPINION INADMISSIBLE.

During Ross's deposition, counsel for Defendants asked Ross if he "assumed A.B. rolled in the Rock 'n Play between the time he was placed and the time he was found."[40] Defendants assert "Dr. Ross only speculates as to how the infant may have moved in the hours between when the mother last checked on the infant and when the infant was found deceased."[41] Defendant further describes Ross's opinion as "complete guesswork as to what happened on the night of the infant's death."[42] Defendants contend that, as Ross cannot definitively prove A.B. rolled onto his side

---

[38] *Id*.

[39] D.I. 174 at 19.

[40] Dr. Ross's Deposition at 430.

[41] D.I. 174 at 19-17.

[42] *Id*. at 17.

or A.B.'s exact position at his time of death, "Dr. Ross's opinions are the epitome of *ipse dixit* reasoning."[43]

For an expert's opinion to clear the reliability threshold under *Daubert*, the expert must ground their opinion in the scientific method.[44] Accordingly, the Court must ensure that the expert's conclusions are based on "valid reasoning and reliable methodology" and that the expert provides local support for any analytical leap.[45]

Here, Ross concluded A.B. died from asphyxiation after his face became pressed against the side of the RnP.[46] Ross based that conclusion on: (1) pressure marks around A.B.'s face and forehead; (2) the position of A.B.'s arms and legs being consistent with lying on his side at the time of death; and (3) the lack of medical or toxicological explanations for A.B.'s death.[47] That conclusion, based on Ross's training and experience applied to the facts of this case, appears reasonable.

The parties do not dispute A.B.'s mother placed him in the RnP in a supine position. Thus, it follows logically from Ross's conclusions that A.B. must have

---

[43] *Id.*

[44] *In re Asbestos Litig.*, 911 A.2d 1176, 1199 (Del. Super. 2006).

[45] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Minner v. American Mortg. & Guar. Co.*, 791 A.2d 826, 866 (Del. Super. 2000) ("It is not necessary that an expert report have an undisputed foundation, it need only be based on valid reasoning and reliable methodology").

[46] Dr. Ross's Report at 6-7.

[47] *Id.* at 4-6.

rolled onto his side at some point before he died. As A.B.'s medical records indicate he could not roll over on his own, the environment of the RnP must have contributed to A.B.'s ability to roll onto his side for Ross's conclusion to be true. To explain that logical chain, Ross must rely, at least partially, on biomechanics. The use of biomechanics in his description of how it would be possible for A.B. to have rolled onto his side does not transform Ross's opinion into one only a biomechanics expert could submit.[48]

"*Daubert* requires only that the trial court determine whether the proponent of the evidence has demonstrated that scientific conclusions have been generated using sound and reliable approaches."[49] Ross's approach to determining A.B.'s cause of death relied upon the facts present in this case, Ross's training and experience, and logical deductions that follow reasonably from Ross's conclusions. Thus, the Court finds that Rosen's opinion provides enough logical support for that analytical leap.

---

[48] The parties argue over whether Ross is qualified to opine on biomechanics. *See* D.I. 174 at 14-16; *see also* D.I. 217 at 14-17. This argument appears to miss the mark, as Ross's opinion is that of a forensic pathologist and not a biomechanical engineer. An expert can testify based on their training and experience, and a forensic pathologist would necessarily have some familiarity with biomechanics to determine cause of death. Ross's opinion, as currently presented, does not require an extensive understanding of biomechanics. Should Plaintiffs seek to have Ross testify as a biomechanical expert, the Court would have to analyze Ross's qualifications in that new light. *See Lee v. Holbrook,* 2021 WL 5492666 at *3 (Del. Super. Nov. 22, 2021).

[49] *In re Asbestos Litig.*, 911 A.2d at 1201.

Because the Court finds Ross's use of the scientific method qualifies as a sound and reliable approach, the Court shall admit Ross's opinion. The Court does not need to determine if Ross's conclusion stands as the only reasonable conclusion, or even that his conclusion is more probable than not.[50]

## IV.   CONCLUSION

Defendants focus their challenge to the admissibility of Ross's opinion on what Ross did not rely upon. Such a challenge misapplies the framework created by *Daubert*. Defendants do not challenge Ross's credentials or the relevance of his opinion. The Court's analysis does not focus on what Ross did not rely on, but instead examines whether the sources Ross did rely on are reliable. As Ross relied primarily on his own training and experience as applied to the facts of this case, his opinion rests on a reliable scientific basis. Cross examination is the way to challenge the credibility of Ross's conclusions. Accordingly, the Court finds that Ross may testify as to A.B.'s cause of death, and the logical chain of events that would have led to A.B.'s death.

**IT IS SO ORDERED.**

*/s/ Patricia A. Winston*
**Patricia A. Winston, Judge**

---

[50] *Id*.